UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RANDALL SHULER,<br><br>   Plaintiff,<br><br> v.<br><br>THE HONORABLE STUART J. SCOTT, et al.,<br><br>   Defendants. | Case No. 22-cv-07652-VKD<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COMPLAINT**<br><br>Re: Dkt. No. 26 |

In this action filed pursuant to 42 U.S.C. § 1983, plaintiff Randall Shuler sues Judge Stuart J. Scott, Judge Drew C. Takaichi, and Judge Theodore C. Zayner—three judges of the Santa Clara County Superior Court—asserting that their conduct in state court proceedings violated his federal constitutional rights. *See* Dkt. No. 17. Defendants move pursuant to Rules 12(b)(1) and 12(b)(6) to dismiss all of Mr. Shuler's claims. Dkt. No. 26. Mr. Shuler opposes the motion. Dkt. No. 37. The matter was deemed suitable for determination without oral argument. Civil L.R. 7-1(b). The Court vacated the November 21, 2023 hearing. *See* Dkt. No. 40.[1] Upon consideration of the moving and responding papers, the Court grants defendants' motion to dismiss the complaint

---

[1] Mr. Shuler filed his opposition brief on October 28, 2023. Dkt. No. 37. On October 30, 2023, he filed a notice stating that he filed a "draft version" of his opposition and sought a stipulation from defendants for an extension of time to November 3, 2023 to file a final version of his opposition brief. *See* Dkt. No. 38. Although no such stipulation was filed, the Court granted Mr. Shuler a final opportunity to submit his revised opposition brief by December 5, 2023. Dkt. No. 43. After the Court denied any further extensions, on December 6, 2023, Mr. Shuler began filing notices, including one in which he claimed that due to certain personal and technical challenges, he hoped to submit his revised opposition within a week. *See* Dkt. Nos. 47, 48. Mr. Shuler's claimed ECF technical issues do not constitute a technical failure that would trigger an extension of time. *See* Civil L.R. 5-1(d)(5). In any event, Mr. Shuler has not filed any further opposition papers, and has had ample opportunity to do so, despite the various challenges he claims he has experienced.

without leave to amend.[2]

## I.     BACKGROUND

The following background facts are drawn from Mr. Shuler's first amended complaint ("FAC"), which is the operative pleading.  *See* Dkt. No. 17.

Mr. Shuler's claims arise out of proceedings that occurred in three separate actions in the Santa Clara County Superior Court.

### A.     *Nemec v. Shuler*, Case No. 16DV019365 (*"Nemec* action")

According to the FAC, the *Nemec* action is an action for a domestic violence restraining order filed on March 1, 2016 by Jennifer Nemec against Mr. Shuler.  *See* Dkt. No. 17 ¶ 43.  On March 2, 2016, Judge Scott granted Ms. Nemec a temporary restraining order.  *See id*. ¶ 47.  After a May 16, 2016 trial, Judge Scott granted Ms. Nemec a three-year restraining order against Mr. Shuler.  *See id*. ¶¶ 49, 55.  Mr. Shuler alleges that he did not have a "dating relationship" with Ms. Nemec, that the case was not properly treated as one under California's Domestic Violence Protection Act ("DVPA"), and that Judge Scott erroneously asserted jurisdiction over the matter by "us[ing] the incorrect standard."  *See id*. ¶¶ 6, 23, 46, 47.  Additionally, Mr. Shuler says that Judge Scott set the matter for trial on a timeframe that was too short, and demonstrated an "obvious bias in sympathetic favor of [Ms. Nemec]," whereas Mr. Shuler alleges that Judge Scott "at times harassed [him] with raised tones," and also made "inappropriate, derogatory and antagonistic" remarks to Mr. Shuler.  *See id*. ¶¶ 48, 53, 55.  Mr. Shuler further alleges that Judge Scott improperly denied Mr. Shuler's motion for a new trial in 2017, and also wrongfully excluded evidence at an April 2017 hearing on Ms. Nemec's motion to quash discovery.  *See id*. ¶¶ 57, 62-64.[3]

The FAC further alleges that on May 8, 2019, Ms. Nemec filed a request to renew the restraining order against Mr. Shuler, but Ms. Nemec's counsel failed to appear at the May 23,

---

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 4, 25.

[3] Meanwhile, Mr. Shuler says that he filed an appeal in July 2016, which he says divested Judge Scott of any jurisdiction over the matter.  According to the FAC, Mr. Shuler's appeal was dismissed in August 2016 for the failure to pay the filing fee.  *See* Dkt. No. 17 ¶¶ 58-60.

2019 hearing on that matter. *Id.* ¶¶ 66, 67. Mr. Shuler alleges that Judge Scott allowed the restraining order to "expire," only to later enter temporary orders renewing the restraining order and restoring the matter to the court's calendar after Ms. Nemec's counsel "made an unnoticed late appearance after [Mr. Shuler] left, and held a one-sided conversation with Judge S[cott]." *Id.* ¶ 67; *see also* Dkt. No. 17-3 at ECF 16. Additionally, Mr. Shuler alleges that Judge Scott improperly set the matter for a February 3, 2020 trial in violation of Mr. Shuler's due process rights. *See* Dkt. No. 17 ¶¶ 72, 73.

Before the February 3, 2020 proceedings began, Mr. Shuler says that he filed and served a statement for Judge Scott's disqualification pursuant to California Code of Civil Procedure § 170.1. Mr. Shuler alleges that Judge Scott answered the statement, and also improperly issued an order striking the statement. *Id.* ¶¶ 75, 76.

Mr. Shuler says that on March 4, 2020, he filed a second statement for Judge Scott's disqualification, "including new grounds which arose at the prior hearing on February 3, 2020[.]" *Id.* ¶ 77. Judge Scott orally denied this second statement for his disqualification. *Id.* Mr. Shuler contends that in denying this application, Judge Scott erroneously stated that Mr. Shuler was limited to filing only one such statement. *Id.* He further alleges that "[b]ecause Judge S[cott] failed to respond to [Mr. Shuler]'s [second statement for disqualification] within 10 days," Judge Scott "was deemed to have been disqualified as a matter of law," but "still kept setting dates, and signing [Ms. Nemec's] attorney's requests to temporarily extend the restraining order against [Mr. Shuler]," pending trial of the matter, which eventually was set for November 4, 2020. *Id.* ¶¶ 78, 83. Mr. Shuler says that he sought time to file a motion for reconsideration regarding his second statement for disqualification, the filing of which reportedly was rejected by a court clerk. *Id.* ¶¶ 79, 80.

On May 12, 2020, Ms. Nemec filed a motion to have Mr. Shuler declared a vexatious litigant. *Id.* ¶ 81. Mr. Shuler says that he did not file a response because he believed that Judge Scott was disqualified from the matter and thus, there was "no legal need" for Mr. Shuler to respond to, or oppose, Ms. Nemec's motion. *Id.*

According to the FAC, on August 9, 2020, Mr. Shuler filed a notice that he had initiated a

1  complaint against Judge Scott with the Commission on Judicial Performance. *Id.* ¶ 82; Dkt. No.
2  17-8. The FAC further alleges that on September 9, 2020, Mr. Shuler filed an objection to Judge
3  Scott taking any action in the case or adjudicating Ms. Nemec's vexatious litigant motion. Dkt.
4  No. 17 ¶ 84; Dkt. No. 17-9. Additionally, Mr. Shuler says that on November 3, 2020, he filed an
5  objection to Judge Scott taking any action in the case or adjudicating Ms. Nemec's motion to
6  renew the restraining order. Dkt. No. 17 ¶ 85; Dkt. No. 17-10. Mr. Shuler alleges that Judge Scott
7  subsequently granted Ms. Nemec's request to renew the restraining order against Mr. Shuler, and
8  also granted her motion to declare Mr. Shuler a vexatious litigant, imposing requirements for a
9  pre-filing order and a $100,000 bond. Dkt. No. 17 ¶ 86.[4] Mr. Shuler says that he filed a notice of
10 appeal with the state appeals court in January 2021.[5] *Id.* ¶ 87.

The FAC alleges that on April 27, 2022, Mr. Shuler filed a motion seeking to have Judge Zayner, who was at that time the presiding judge of the Santa Clara County Superior Court, set aside Judge Scott's vexatious litigant order. Dkt. No. 17 ¶ 88; Dkt. No. 17-11. Around May 5, 2022, a court clerk sent Judge Scott a "Request for Action," asking whether Mr. Shuler's motion should be stricken for lack of a pre-filing order. Judge Scott responded: "yes." *See* Dkt. No. 17 ¶ 91; Dkt. No. 17-12.

Mr. Shuler says that in June 2022, he filed another motion to vacate Judge Scott's vexatious litigant order, along with a request for a pre-filing order. Dkt. No. 17 ¶ 95; Dkt. No. 17-14. According to the FAC, Judge Zayner granted Mr. Shuler's request for a pre-filing order allowing the motion to be filed, "but wrongfully directed that the motion be heard under the disqualified judge, Judge S[cott]." Dkt. No. 17 ¶ 96; Dkt. No. 17-15. Mr. Shuler says he subsequently received a letter from the court, directing him to set his motion for a hearing in Judge Scott's department. Dkt. No. 17 ¶ 97; Dkt. No. 17-16. The FAC alleges that, as of the August 7,

---

[4] Although the FAC says that Judge Scott issued these orders on November 4, 2020, other documents appended to the FAC indicate that the orders were issued on December 3, 2020. *See, e.g.,* Dkt. No. 17-11 at ECF 2.

[5] Although the FAC says that Mr. Shuler's appeal was filed in January 2020, the context of the FAC's allegations indicate that the appeal more likely was filed in January 2021. The FAC does not state the status of this appeal, but there is no indication it was successful.

2023 filing date of the FAC, Mr. Shuler had not re-filed his motion to set aside Judge Scott's orders. Dkt. No. 17 ¶ 98.

### B.  *Shuler v. Edick*, Case No. 21CV377043 ("*Edick* action")

According to the FAC, the *Edick* action is "a defamation case arising out of the [*Nemec* action]," that was assigned to Judge Takaichi. *See* Dkt. No. 17 ¶ 3. Mr. Shuler says that in April 2022, the *Edick* defendant moved to dismiss the action based on Judge Scott's vexatious litigant order, arguing that Mr. Shuler had not obtained the requisite pre-filing order. *Id*. ¶ 94. Mr. Shuler alleges that Judge Takaichi improperly granted that motion to dismiss in May 2022. He contends that Judge Takaichi's dismissal order is deficient because it was not based on sufficient legal argument or authority, and is also void inasmuch as it was based on Judge Scott's vexatious litigant order, which Mr. Shuler argues is itself void. *Id*.

### C.  *Shuler, et al. v. Kramer, et al.*, Case No. 17CV310710 ("*Kramer* action")

According to the FAC, the *Kramer* action is a lawsuit for legal malpractice. *See id*. ¶ 3. Mr. Shuler says that in October 2022, he sought a pre-filing order and requested that the *Kramer* action be set for trial. *Id*. ¶ 102. He alleges that Judge Zayner and Judge Takaichi both wrongfully denied his request for a pre-filing order. *Id*. ¶¶ 103, 104. Mr. Shuler further alleges that the *Kramer* action subsequently was dismissed in May 2023 based on Judge Zayner's and Judge Takaichi's wrongful denials of his request for a pre-filing order, and that the dismissal of the action ultimately was due to Judge Scott's "initial illegal vexatious litigant order[.]" *Id*. ¶¶ 105, 106.

\* \* \*

Based on these allegations, Mr. Shuler alleges that all three defendants "failed to perform their duties as judicial officers" and violated his rights under the U.S. Constitution. *Id*. ¶ 107.

Mr. Shuler, who is representing himself, filed the present action, asserting claims for relief under 42 U.S.C. § 1983 for violation of his rights under the First and Fourteenth Amendments to the U.S. Constitution. *Id*. ¶¶ 108-117. He seeks "declaratory relief that the acts and[/]or omissions of the [defendants], as set forth above, violate rights secured by the First and Fourteenth Amendment[s] to the United States Constitution." *See id*. at 28. He also seeks "attorney and

expert fees," "costs for suit," and "punitive damages to deter similar conduct." *Id*. Additionally, Mr. Shuler requests that this Court "[r]etain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court." *Id*.

Defendants move pursuant to Rules 12(b)(1) and 12(b)(6) to dismiss Mr. Shuler's complaint, arguing that his claims are barred by the *Rooker-Feldman* doctrine, Eleventh Amendment immunity, and judicial immunity. Defendants argue that Mr. Shuler's complaint fails, in any event, to state a plausible claim for relief.

## II. DISCUSSION

### A. Rule 12(b)(1) Motion to Dismiss

#### 1. Legal Standard

A Rule 12(b)(1) motion to dismiss challenges a federal court's jurisdiction over the subject matter of a plaintiff's complaint. A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings (a "facial attack") or by presenting extrinsic evidence (a "factual attack"). *Warren v. Fox Family Worldwide, Inc*., 328 F.3d 1136, 1139 (9th Cir. 2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*.

Defendants' arguments focus on the sufficiency of the FAC's allegations. The Court therefore construes the present motion as a facial attack on jurisdiction. As such, the record is limited to the FAC and materials that may be judicially noticed. *See Hyatt v. Yee*, 871 F.3d 1067, 1071 n.15 (9th Cir. 2017).

#### 2. *Rooker-Feldman* Doctrine

Although Mr. Shuler asserts claims arising under federal law, *see* 28 U.S.C. § 1331, the *Rooker-Feldman* doctrine "instructs that federal district courts are without jurisdiction to hear

6

direct appeals from the judgments of state courts," as well as the "de facto equivalent" of such appeals. *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012); *see also Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923). The doctrine applies to "challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *Feldman*, 460 U.S. at 486; *see also Worldwide Church of God v. McNair*, 805 F.2d 888, 891 (9th Cir. 1986) ("This doctrine applies even when the challenge to the state court decision involves federal constitutional issues."). Application of the doctrine is confined to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

Defendants argue that the present action is barred by the *Rooker-Feldman* doctrine because Mr. Shuler's claims are a forbidden de facto appeal of the various state court decisions he contends are void or invalid, and raise issues that are "inextricably intertwined" with those decisions. *See* Dkt. No. 26 at 9; Dkt. No. 39 at 4. "It is a forbidden de facto appeal under *Rooker-Feldman* when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court, and seeks relief from the judgment of that court." *Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2003); *see also Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004) (*Rooker-Feldman* doctrine applies "when the federal plaintiff asserts as [his] injury legal error or errors by the state court *and* seeks as [his] remedy relief from the state court judgment."). Such forbidden de facto appeals include cases in which a federal plaintiff "complain[s] of harm caused by a state court judgment that directly withholds a benefit from (or imposes a detriment on) the federal plaintiff, based on an allegedly erroneous ruling by that court." *Id*. Forbidden de facto appeals also include cases in which a federal plaintiff "complain[s] of a legal injury caused by a state court judgment, based on an allegedly erroneous legal ruling, in a case in which the federal plaintiff was one of the litigants." *Id*.

To determine whether an action is a de facto appeal, courts "pay close attention to the *relief* sought by the federal-court plaintiff." *Cooper*, 704 F.3d at 777-78. "If a plaintiff brings a

7

de facto appeal from a state court judgment, *Rooker-Feldman* requires that the district court dismiss the suit for lack of subject matter jurisdiction," *Kougasian*, 359 F.3d at 1139, and also prohibits the plaintiff from litigating "issues [that] are inextricably intertwined with a forbidden appeal," *Cooper*, 704 F.3d at 778; *see also Noel*, 341 F.3d at 1158 ("Once a federal plaintiff seeks to bring a forbidden de facto appeal, as in *Feldman*, that federal plaintiff may not seek to litigate an issue that is 'inextricably intertwined' with the state court judicial decision from which the forbidden de facto appeal is brought."). "Only when there is already a forbidden de facto appeal in federal court does the 'inextricably intertwined' test come into play[.]" *Noel*, 341 F.3d at 1158.

Mr. Shuler's FAC presents a de facto appeal of the various state court decisions he contends are erroneous or illegal. First, the FAC asserts as bases for relief various "legal wrongs" and "legal error or errors" allegedly committed by Judges Scott, Zayner, and Takaichi in the course of the proceedings in the *Nemec*, *Edick*, and *Kramer* actions. *Noel*, 341 F.3d at 1163; *Kougasian*, 359 F.3d at 1140. For example, Mr. Shuler alleges that Judge Scott improperly adjudicated the *Nemec* action by "us[ing] an incorrect criteria and standard in attempt to qualify the case as one under the purview of the DVPA"; demonstrating "extreme prejudice against [Mr. Shuler] and bias for [Ms. Nemec]"; improperly denying Mr. Shuler's request for a new trial; wrongfully excluding evidence at an April 2017 hearing on Ms. Nemec's motion to quash discovery; refusing to recuse himself; renewing the restraining order after allowing it to expire; improperly setting trial dates; adjudicating Ms. Nemec's vexatious litigant order and request to renew the restraining order; and directing a court clerk to strike his motion to set aside the vexatious litigant order. *See, e.g.*, Dkt. No. 17 ¶¶ 6, 21, 23, 25, 26-29, 33, 48, 53, 55, 57, 62-64, 67, 72, 73, 75-78, 83-86, 91. Similarly, Mr. Shuler alleges that Judge Zayner "wrongfully directed that [Mr. Shuler's motion to vacate Judge Scott's vexatious litigant order] be heard under the disqualified judge, Judge S[cott]," and wrongfully denied his request for a pre-filing order in the *Kramer* action, leading to the dismissal of that action. *See id.* ¶¶ 96, 103, 105, 106. Additionally, Mr. Shuler alleges that Judge Takaichi improperly granted a motion to dismiss the *Edick* action based on Judge Scott's vexatious litigant order, and also wrongfully denied his request for a pre-filing order in the *Kramer* action, leading to the dismissal of that case. *See id.* ¶¶ 94, 104-106.

8

Mr. Shuler claims that all three defendants "failed to perform their duties as judicial officers," leading to alleged injuries, including the imposition of a pre-filing order requirement and the dismissal of the *Edick* and *Kramer* actions, with damages in the *Kramer* action alleged to be "no less than 1 billion dollars ($1B USD)." *See id*. ¶¶ 86, 106, 107.

Second, the FAC seeks relief from the decisions of Judges Scott, Takaichi, and Zayner. *Kougasian*, 359 F.3d at 1140; *Noel*, 341 F.3d at 1163. Mr. Shuler alleges that Judge Scott's "actions were illegal, the orders had no legal effect, are a 'nullity,' and VOID. As such, they may be set aside and vacated at any time without limitation." Dkt. No. 17 ¶ 24. Additionally, he alleges that the acts and decisions of Judges Takaichi and Zayner are erroneous, and also void insofar as they were based on Judge Scott's vexatious litigant order. *See id*. ¶¶ 94, 103-106. The FAC broadly seeks damages, as well as a declaration "that the acts and or omissions of the [defendants], as set forth above, violate rights secured by the First and Fourteenth Amendment to the United States Constitution." *Id*. at 28.

In his opposition papers, Mr. Shuler now says that he "doesn't seek relief from this Court to 'reverse' the decisions entered in any of the three underlying cases, or even to 'void' them," arguing that such an order is unnecessary because he contends that those decisions "are already void." Dkt. No. 37 at 8. Additionally, Mr. Shuler disclaims an intent to seek damages or punitive damages, which he purports to withdraw from the FAC. *Id*. at 11. Rather, he says that he seeks "declaratory relief" that defendants' alleged acts and omissions violate his constitutional rights, and that such relief does not require this Court to review defendants' decisions in the underlying state court proceedings. *Id*. at 8-9. To the contrary, the portions of the FAC highlighted by Mr. Shuler directly challenge various decisions by Judge Scott, Judge Takaichi, and Judge Zayner on the grounds that those decisions were erroneous and/or made without proper legal authority. *See* Dkt. No. 17 ¶¶ 52-54, 62, 63, 67, 73, 74, 75, 77, 86, 91-96, 101-106. Insofar as those allegations directly challenge the correctness or validity of those decisions, the present action is a forbidden de facto appeal. To the extent Mr. Shuler seeks to bring a more general constitutional challenge based on those allegedly erroneous decisions, such a challenge is inextricably intertwined with his forbidden de facto appeal and would require this Court to review the correctness or validity of

those decisions through the lens of Mr. Shuler's federal constitutional theories under the particular circumstances of his cases. *See Bianchi v. Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003) ("If claims raised in the federal court action are 'inextricably intertwined' with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules, then the federal complaint must be dismissed for lack of subject matter jurisdiction."); *Fontana Empire Center, LLC v. City of Fontana*, 307 F.3d 987, 992 (9th Cir. 2002) ("A claim is inextricably intertwined with a state court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it, or if the relief requested in the federal action would effectively reverse the state court decision or void its ruling.") (internal quotations and citations omitted); *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring) (a "federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.").

Accordingly, the Court finds that the *Rooker-Feldman* doctrine precludes the Court's exercise of jurisdiction over all of Mr. Shuler's claims. Even if the *Rooker-Feldman* doctrine did not apply, Mr. Shuler's claims against all defendants must be dismissed because defendants are entitled to absolute judicial immunity, and Mr. Shuler's claims are barred by the Eleventh Amendment.[6]

### B. Rule 12(b)(6) Motion to Dismiss

#### 1. Legal Standard

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the legal sufficiency of the claims in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory. *Id.* (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In such a motion, all material allegations in the complaint must be

---

[6] In light of these conclusions, the Court finds it unnecessary to address defendants' remaining arguments that Mr. Shuler's claims must be dismissed as untimely and on the ground that the FAC otherwise fails to state sufficient facts to support a claim for relief.

taken as true and construed in the light most favorable to the claimant. *Id*.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Moreover, a court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Prager Univ. v. Google LLC* ("*Prager I*"), No. 17-CV-06064-LHK, 2018 WL 1471939, at *3 (N.D. Cal. Mar. 26, 2018) (quoting *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam)). Nor does a court accept allegations that contradict documents attached to the complaint or incorporated by reference, *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014), or that rest on "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Although pro se pleadings are liberally construed and held to a less stringent standard than those drafted by lawyers, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), a complaint (or portion thereof) should be dismissed for failure to state a claim if it fails to set forth "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570.

Documents appended to or incorporated into the complaint or which properly are the subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018); *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). A court may take judicial notice of facts that are "not subject to reasonable dispute" because they are "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also Khoja*, 899 F.3d at 999. Thus, a court properly may take judicial notice of matters of public record, but cannot take judicial notice of disputed facts contained within such records. *Khoja*, 899 F.3d at 999 (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)).

### 2. Judicial Immunity

Absolute judicial immunity is "an immunity from suit, not just from ultimate assessment of

11

damages." *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Judicial immunity applies in actions brought under § 1983. *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). Thus, judges are not liable in civil actions "for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Id.* at 355-56 (internal quotations and citation omitted); *see also Pierson v. Ray*, 386 U.S. 547, 553-54 (1967) ("Immunity applies even when the judge is accused of acting maliciously and corruptly."). Judicial immunity is overcome in only two sets of circumstances: (1) where a judge takes actions outside of his or her judicial capacity, and (2) where judicial actions were taken in the complete absence of all jurisdiction. *Mireles*, 502 U.S. at 11-12; *Crooks v. Maynard*, 913 F.2d 699, 700 (9th Cir. 1990).

Whether an act by a judge "is a 'judicial' one relate[s] to the nature of the act itself, i.e., whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362. The Ninth Circuit has "reject[ed] a cramped and illogical reading of a judicial act that would include only instances when a judge expressly decides a formal motion or request." *Lund v. Cowan*, 5 F.4th 964, 971 (9th Cir. 2021). Thus, "judicial immunity applies when a judge makes a statement from the bench during an in-court proceeding in a case before the judge." *Id*. at 972. As set forth above, Mr. Shuler's claims against Judges Scott, Zayner, and Takaichi relate to their alleged acts as judges in the *Nemec*, *Edick*, and *Kramer* actions, including setting case deadlines, ruling on motions, conducting hearings and trials, and making statements during court proceedings. The actions of which Mr. Shuler complains occurred while each of the defendants adjudicated matters in those underlying state court proceedings. These are "function[s] normally performed by a judge" in "his judicial capacity." *Stump*, 435 at 362.

There is no question that the California Superior Court has jurisdiction over matters under the Family Code. *See* Cal. Fam. Code § 200. Mr. Shuler's FAC alleges that Ms. Nemec's petition was not properly brought under California's DVPA, and that Judge Scott did not legitimately have jurisdiction over the *Nemec* action. *See, e.g.*, Dkt. No. 17 ¶¶ 6, 23, 46, 47. However, for purposes of applying the doctrine of judicial immunity, "[a] clear absence of all jurisdiction means a clear lack of all subject matter jurisdiction." *Mullis v. U.S. Bankr. Ct. for Dist. of Nevada*, 828 F.2d

1385, 1389 (9th Cir. 1987). Mr. Shuler's allegations do not establish that Judge Scott acted in the clear absence of all jurisdiction. *See id.* (allegations regarding jurisdictionally deficient petition did not mean that judges acted in clear absence of all jurisdiction); *see also Stump*, 435 U.S. at 357 n.7 (discussing distinction between a lack of jurisdiction and acts in excess of jurisdiction). Even assuming, without deciding, that Mr. Shuler's allegations amount to acts in excess of jurisdiction, such acts do not abrogate judicial immunity, even if they result in "grave procedural errors." *Stump*, 435 U.S. at 359.

Citing *Pulliam v. Allen*, 466 U.S. 522 (1984), Mr. Shuler argues that judicial immunity does not apply because that doctrine does not bar prospective declaratory relief. *See* Dkt. No. 37 at 9-10. Defendants point out that "following the decision in *Pulliam*, Congress amended Section 1983 to 'restore the doctrine of judicial immunity to the status it occupied prior' to *Pulliam*." Dkt. No. 39 at 6 (quoting *Moore v. Urquhart*, 889 F.3d 1094, 1104 (9th Cir. 2018)). Thus, the Ninth Circuit has observed that in § 1983, as amended in 1996, "Congress expanded the scope of judicial immunity by providing that 'in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.'" *Moore*, 899 F.3d at 1104 (quoting Federal Courts Improvement Act of 1996 (FCIA), Pub. L. No. 104-317, § 309(c), 110 Stat. 3847, 3853 (codified at 42 U.S.C. § 1983)). There are no facts alleged to suggest that Mr. Shuler could overcome § 1983's statutory bar against injunctive relief as to all defendants. While the Ninth Circuit has "not yet explicitly answered whether the statutory amendment [to § 1983] bars declaratory relief," *Lund*, 5 F.4th at 970 n.2, the FAC's allegations concern retrospective relief for alleged past conduct that has already occurred. Although Mr. Shuler now says that he intends to seek prospective declaratory relief in an amended pleading, the Court does not have authority to grant such relief for the reasons discussed below.

### 3. Eleventh Amendment Immunity

As the Eleventh Amendment does not destroy a court's original jurisdiction, the Court evaluates a motion to dismiss based on Eleventh Amendment immunity under Rule 12(b)(6). *See Wisconsin Dep't of Corrs. v. Schacht*, 524 U.S. 381, 389 (1998); *Tritchler v. County of Lake*, 358

1  F.3d 1150, 1153-54 (9th Cir. 2004); *Miles v. California*, 320 F.3d 986, 988, 989 (9th Cir. 2003);

2  *Steshenko v. Gayrard*, 44 F. Supp. 3d 941, 947-49 & n.1 (N.D. Cal. 2014).

The Court agrees that Eleventh Amendment immunity bars Mr. Shuler's claims because he seeks retrospective relief against all three defendants. "The Eleventh Amendment bars individuals from bringing lawsuits against a state for money damages or other retrospective relief." *Lund*, 5 F.4th at 969 (internal quotations and citation omitted). "State officials sued in their official capacities are generally entitled to Eleventh Amendment immunity." *Id*. (internal quotations and citation omitted). While the FAC indicates that defendants are being sued in their official and individual capacities (*see* Dkt. No. 17, caption), and Mr. Shuler says that he would like to amend his complaint to name defendants only in their individual capacities (*see* Dkt. No. 37 at 7), all of his allegations concern defendants' alleged conduct as judicial officers acting in their official capacities. The Eleventh Amendment thus applies to Judges Scott, Takaichi, and Zayner. *See Lund*, 5 F.4th at 969 (Eleventh Amendment applies to state court judge being sued in his official capacity); *see also Simmons v. Sacramento Cnty. Superior Ct.*, 318 F.3d 1156, 1161 (9th Cir. 2003) ("Plaintiff cannot state a claim against the Sacramento County Superior Court (or its employees), because such suits are barred by the Eleventh Amendment."). Accordingly, the Court grants defendants' motion to dismiss the FAC as barred by the Eleventh Amendment. While Mr. Shuler now says that he intends to seek prospective declaratory relief in an amended pleading, the Court does not have authority to grant such relief for the reasons discussed below.

### III. LEAVE TO AMEND

Rule 15(a) of the Federal Rules of Civil Procedure "provides that leave to amend should be freely given when justice so requires," because "the court must remain guided by the underlying purpose of Rule 15 . . . to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted). "The decision of whether to grant leave to amend nevertheless remains within the discretion of the district court," which may deny leave to amend if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the party seeking amendment has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d

14

522, 532 (9th Cir. 2008) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Mr. Shuler requests leave to file a second amended complaint to name an additional state court judge, Judge Adams, and court clerk Georgieva as defendants. *See* Dkt. No. 37 at 11. The record indicates that Mr. Shuler seeks to assert a § 1983 claim against Judge Adams for refusing to entertain his motion to vacate Judge Scott's vexatious litigant order and referring that matter to Judge Zayner. Mr. Shuler apparently seeks to assert a § 1983 claim against clerk Georgieva, who struck his filings after Judge Scott directed that the filings be stricken. *See id.*; *see also* Dkt. No. 17 at 24 n.3 & ¶¶ 89-91; Dkt. No. 17-12. For the reasons discussed above, any such claim against Judge Adams would be barred by judicial immunity, as Judge Adams's alleged conduct constitutes functions "normally performed by a judge" and for which Mr. Shuler "dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362. Moreover, Mr. Shuler challenges actions the court clerk took in her role as clerk; thus, absolute quasi-judicial immunity applies. *See Mullis*, 828 F.2d at 1390 ("Court clerks have absolute quasi-judicial immunity from damages for civil rights violations when they perform tasks that are an integral part of the judicial process."); *see also Moore*, 899 F.3d at 1104 ("The judicial branch encompasses officials other than those with the title 'judge,' such as court clerks.").

Mr. Shuler also requests leave to file a second amended complaint to add StackSpeed, Inc. as a plaintiff. *See* Dkt. No. 37 at 10. Defendants correctly note that Mr. Shuler, who is not an attorney, cannot represent the interests of a corporate entity. *See* Civil L.R. 3-9(b) ("A corporation, unincorporated association, partnership or other such entity may appear only through a member of the bar of this Court."); *see also Rowland v. California Men's Colony*, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel."); *In re Highley*, 459 F.2d 554, 555 (9th Cir.1972) ("A corporation can appear in a court proceeding only through an attorney at law."). In any event, whether or not StackSpeed, Inc. is added as a plaintiff to the present action, that would not change the Court's conclusion that Mr. Shuler's claims against the named defendants are barred by the *Rooker-Feldman* doctrine, absolute judicial immunity, and the Eleventh Amendment.

1     Mr. Shuler says that he will amend his FAC to seek prospective declaratory relief and injunctive relief. For example, Mr. Shuler says that he will seek an order from this Court for "prospective declaratory relief, and injunctive relief, as necessary, to enjoin and prevent from further interruption and interference with [his] future actions upon winning this case to file the set aside motion to vacate Defendant Scott's void orders." Dkt. No. 37 at 12; *see also id*. at 11. Similarly, in other filings, Mr. Shuler says that he wants to "seek relief from this Court to enjoin or stop such future interference when [he] re-files the motion to set aside and vacate the void orders, to clear [his] name, reputation and re-establish and correct the violations and trespasses on his federal rights," and "to support injunctive relief to prevent the court and its officers from future interference with [his] motion to set aside and vacate the void orders when the motion is refiled in the lower state family court upon prevailing in this action." Dkt. No. 41 at 3, 4. Federal district courts, however, lack authority to direct state courts, state judicial officers, or other state officials in the performance of their duties. *See Demos v. U.S. Dist. Ct.*, 925 F.2d 1160, 1161-62 (9th Cir. 1991) (holding federal court cannot direct state court to accept a litigant's filings); *Dunlap v. Corbin*, 532 F. Supp. 183, 187 (D.Ariz.1981) (federal court cannot direct state court to provide speedy trial), *aff'd* 673 F.2d 1337 (9th Cir. 1982).

    While Mr. Shuler states that he intends to sue Judges Scott, Takaichi, and Zayner only as "individuals," as discussed above all of Mr. Shuler's allegations concern acts each defendant took in their role as judges. There is no indication that additional facts could be alleged in an amended pleading that would permit Mr. Shuler to press his claims against defendants in their individual capacities.

    This Court also finds no basis to conclude that there are additional facts that could be alleged on a further amendment that would overcome the *Rooker-Feldman*, absolute judicial immunity, and Eleventh Amendment hurdles addressed in this order. Accordingly, amendment would be futile, and the Court dismisses Mr. Shuler's FAC without leave to amend. The Clerk

///

///

///

shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated: December 12, 2023

Virginia K. DeMarchi
United States Magistrate Judge

17